UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTERCARD INTERNATIONAL INCORPORATED,

                              Plaintiff,

                     - against -

NIKE, INC., WILLIAM E. DENNINGS III and RYAN
FUSSELMAN,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF Case

Case No. 15-CV 114 (NSR)


### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
### OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT


EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ALLEGATIONS PLEADED IN THE AMENDED COMPLAINT ............................................ 2

    A.    MasterCard's Employment of Dennings and Fusselman ........................................ 2

    B.    The Relevant Provisions of the LTIP Agreements ................................................. 2

        1.    The Non-Compete Provisions .................................................................... 2

        2.    The Non-Solicitation Provisions ............................................................... 3

        3.    The Confidential Information Provision ..................................................... 4

        4.    The Choice of Law Provision ..................................................................... 4

    C.    The Pertinent Allegations of the Amended Complaint ........................................... 5

ARGUMENT ........................................................................................................................... 5

POINT I    THE BREACH OF CONTRACT CLAIMS AGAINST DENNINGS
           AND FUSSELMAN SHOULD BE DISMISSED ..................................................... 6

    A.    The Non-Recruitment Provision Is Unenforceable .................................................. 7

        1.    The New York Courts That Have Considered the Enforceability
            of a Non-Recruitment Provision Have Emphasized The Importance
            of Protecting a Company from a Competing Business. ............................... 8

        2.    Other Courts Which Have Considered the Enforceability of a Non-
            Recruitment Provision Have Also Emphasized the Importance of
            Protecting a Company from its Competitor. ............................................. 10

        3.    Applying the Teachings of the Case Law ................................................. 11

    B.    MasterCard Has Failed To Plead A Breach Of The Confidentiality
        Provision. ............................................................................................................ 12

    C.    MasterCard Has Failed To Plead A Breach Of The Non-Solicitation
        of Suppliers Provision ........................................................................................ 15

POINT II    MASTERCARD HAS FAILED TO STATE A CLAIM FOR TORTIOUS
           INTERFERENCE WITH CONTRACT. .................................................................. 17

    A.    Applicable Law Analysis. ..................................................................................... 17

|  |  | 1. | Oregon Law | 17 |
|  |  | 2. | Missouri Law | 18 |
|  |  | 3. | New York Law | 19 |
|  | B. |  | Oregon Law Applies. | 19 |
|  | C. |  | Under Oregon Law, MasterCard Has Failed to Plead a Claim for Tortious Interference with Contract. | 21 |
| POINT III |  |  | MASTERCARD CANNOT STATE A CLAIM FOR UNFAIR COMPETITION. | 22 |
|  | A. |  | Applicable Law Analysis. | 22 |
|  |  | 1. | Oregon Law | 22 |
|  |  | 2. | Missouri Law | 23 |
|  |  | 3. | New York Law | 23 |
|  | B. |  | Oregon Law Precludes MasterCard's Claim for Unfair Competition. | 24 |
| CONCLUSION |  |  |  | 25 |

FIRM:28964254

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692, 833 N.Y.S.2d 138,
140 (N.Y. App. Div. 2007) ...................................................................................23

*AcryMed., Inc. v. ConvaTec.*,
317 F. Supp. 2d 1204 (D. Or. 2004) ..............................................................22, 24

*American Broadcasting Cos., Inc. v. Wolf*,
52 N.Y.2d 394, 420 N.E.2d 363, 438 N.Y.S.2d 482 (1981) .................................7

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ..................................................................................6

*AroChem Int'l, Inc. v. Buirkle*,
968 F.2d 266 (2d Cir. 1992) ................................................................................19

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... *passim*

*Barrett v. Forest Labs., Inc.*,
39 F. Supp. 3d 407, 431 (S.D.N.Y. 2014) ...........................................................15

*Bayer Schera Pharma AG v. Sandoz, Inc.*,
No. 08 Civ. 03710, 2010 U.S. Dist. LEXIS 33252 (S.D.N.Y. Mar. 29, 2010).......23

*BDO Seidman v. Hirschberg*,
93 N.Y.2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999).........................7, 8, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................6, 12

*Clinch v. Heartland Health*, 187 S.W.3d 10, 16 (Mo. Ct. App. W.D. 2006) ...............18

*Conseco Fin. Servicing Corp. v. N. Am. Mort. Co.*,
381 F.3d 811 (8th Cir. 2004) ..............................................................................23

*Corp. v. Zenfinity Capital, LLC*,
No. 4:14-CV-00754, 2015 U.S. Dist. LEXIS 7770 (E.D. Mo., Jan. 23, 2015) .................18, 19

*Czech Beer Imps., Inc. v. C. Haven Imps., LLC*,
No. 04 Civ. 2270, 2005 U.S. Dist. LEXIS 12310 (S.D.N.Y. June 23, 2005)..............17, 19, 22

*Energy Consumption Auditing Servs., LLC v. Brightergy, LLC*,
No. 13-2588, 2014 U.S. Dist. LEXIS 126676 (D. Kan. Sept. 10, 2014)................23

FIRM:28964254

*Erie RR v. Tompkins*,
   304 U.S. 64 (1938)..................................................................................................17

*Foster v. Churchill*,
   87 N.Y.2d 744, 665 N.E.2d 153, 642 N.Y.S.2d 583 (1996)....................................19

*Grand Vehicle Works Holdings Corp. v. Frey*,
   No. 03 C 7948, 2005 U.S. Dist. LEXIS 13629 (N.D. Ill. July 8, 2005) ............10, 11

*Installed Bldg. Prods., LLC v. Cottrell*,
   No. 13 Civ. 1112, 2014 U.S. Dist. LEXIS 101926 (W.D.N.Y. Jul. 25, 2014)........14

*Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*,
   15 F. Supp. 3d 1075, 1108 (D. Or. 2014) ................................................18, 21, 22

*JBC Holdings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013).....................................................................14

*Krock v. Lipsay*,
   97 F.3d 640 (2d Cir. 1996).......................................................................................19

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)...................................19

*Lazer Inc. v. Kesselring*,
   13 Misc. 3d 427, 823 N.Y.S.2d 834 (N.Y. Sup. Ct., 2005) ...........................8, 9, 10

*McGanty v. Staudenraus*,
   321 Or. 532, 901 P.2d 841 (Or. 1995) ..............................................................17, 21

*Nazeri v. Missouri Valley College*,
   860 S.W.2d 303 (Mo. 1993) (*en banc*) .................................................................18

*Numrich v. Ntekpere*,
   No. 12-CV-01494, 2013 U.S. Dist. LEXIS 14792 (D. Or. Feb. 4, 2013)................21

*NW. Natural Gas Co. v. Chase Gardens, Inc.*,
   328 Or. 487, 982 P.2d 1117 (Or. 1999) ............................................................18, 21

*Penton Learning Sys., LLC v. Defense Strategies Institute Group*,
   2014 NY Slip Op. 32130(U), 2014 N.Y. Misc. LEXIS 3622 (N.Y. Sup. Ct.
   Jul. 28, 2014)............................................................................................................7

*Precision Automation, Inc. v. Tech. Servs.*,
   2007 U.S. Dist. LEXIS 94555 (D. Or. Dec. 14, 2007) ......................................22, 24

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
   No. 09-CV-8578, 2014 U.S. Dist. LEXIS 134830 (S.D.N.Y. Sept. 24, 2014)........24

FIRM:28964254

*Reed Elsevier Inc. v. TransUnion Holding Co.*,
   No. 13 Civ. 8739, 2014 U.S. Dist. LEXIS 2640 (S.D.N.Y. Jan. 9, 2014)............................7, 8

*Reed Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 397, 353 N.E.2d 590, 593, 386
   N.Y.S.2d 677, 679 (1976) ..................................................................................................7

*Renaissance Nutrition, Inc. v. Kurtz*,
   2012 U.S. Dist. LEXIS 2490 (W.D.N.Y., Jan. 9, 2012) ....................................................9, 10

*Rockland Expo., Inc. v. Alliance of Auto. Serv. Providers*,
   894 F. Supp. 2d 288 (S.D.N.Y., 2012).....................................................................................23

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)........................................................................................................6

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
   280 F.3d 175 (2d Cir. 2001).......................................................................................................23

*Top Serv. Body Shop v. Allstate Ins. Co.*,
   283 Or. 201, 582 P.2d 1365 (Or. 1978) ...................................................................................18

*Torah Soft, Ltd. v. Drosnin*,
   224 F. Supp. 2d 704 (S.D.N.Y. 2002).......................................................................................19

*Vigilant.com v. ArgusTest.com, Inc.*,
   2005 U.S. Dist. LEXIS 45999 (D. Or. Sept. 6, 2005)..............................................................22

*Western Blue Print Co., LLC v. Roberts*,
   367 S.W. 3d 7 (Mo. 2012) .......................................................................................................18

*YCA, L.L.C. v. Berry*,
   No. 03 C 3116, 2004 U.S. Dist. LEXIS 8129 (N.D. Ill. May 6, 2004) .............................10, 11

**Statutes**

Oregon Uniform Trade Secrets Act .......................................................................................22, 24

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................5

Restatement (Third) of Unfair Competition ...............................................................................23

## PRELIMINARY STATEMENT

Aware that employees in its Information Security ("IS") Department have been leaving because of a poor working environment, plaintiff MasterCard International Incorporated ("MasterCard") filed this lawsuit to foreclose additional employees from following those who had already left. MasterCard's strategy is transparent: if unable to retain employees through sound employee relations practices, then threaten and intimidate those who remain so they will be afraid to leave, and punish those who have left by making blatantly false and career-threatening attacks.

As part of that strategy, the crux of the Amended Complaint is that defendants William Dennings and Ryan Fusselman, both of whom left MasterCard to join defendant NIKE, Inc. ("NIKE"), violated restrictive covenants preventing the solicitation of former co-workers to seek employment elsewhere. The law, however, does not support any such claim where the new employment opportunity allows an individual to use his or her knowledge and skills for a *non-competitor* new employer. To allow MasterCard's non-solicitation claims to go forward would have a chilling effect on employee mobility and be contrary to New York law.

MasterCard's additional claims, which are based on allegations of NIKE's reconfiguring its own information security system and defendants' misappropriating confidential information, are equally baseless. They are premised purely on assertions that are so speculative as to be implausible. Accordingly, the Amended Complaint should be dismissed in its entirety.

## ALLEGATIONS PLEADED IN THE AMENDED COMPLAINT

**A.**   **MasterCard's Employment of Dennings and Fusselman**

MasterCard employed Dennings and Fusselman in its IS Department prior to their joining

NIKE.  (Am. Compl.[1] ¶¶ 2-3, 51, 65).  Dennings' last day of employment with MasterCard was

on or about May 28, 2013; Fusselman's last day was October 11, 2013.  (*Id.* at ¶¶ 51, 65).  When

they left MasterCard, Dennings was the Chief Information Security Officer ("CISO"), while

Fusselman was a Senior Business Leader in the IS Department.  (*Id.* at ¶ 29).  Fusselman

reported to Dennings.  (*Id.* at ¶ 34).   After they left MasterCard, Dennings and Fusselman

commenced employment with NIKE.  (*Id.* at ¶¶ 51, 65).

While employed by MasterCard, Dennings and Fusselman each executed an agreement

entitled "MasterCard LTIP Non-Competition Agreement" (the "LTIP Agreement").  (Am.

Compl. ¶¶ 4, 33, 37).  Dennings signed his LTIP Agreement on April 4, 2012, and Fusselman

signed his on March 18, 2013.  (*Id.* at ¶¶ 33, 37).  The LTIP Agreements were identical, except

for the length of time of the restrictive covenants contained in each; the periods in the LTIP

Agreement signed by Dennings were longer than the periods in Fusselman's.  (*Id.* at ¶¶ 38-40;

Dennings Agrt., §§ 2-3; Fusselman Agrt., §§ 2-3).[2]

**B.**   **The Relevant Provisions of the LTIP Agreements**

**1.**   **The Non-Compete Provisions**

Section 1 of the LTIP Agreement, entitled "Non-Competition," contains two separate

non-compete provisions.  The first, which is found in Section 1(a) and labeled "Key

Competitors," prohibited Dennings for a period of twelve (12) months following the termination

of his MasterCard employment and Fusselman for six (6) months from "becom[ing] employed

---

[1] References to the Amended Complaint, ECF Docket No. 13, which, for the Court's convenience, is attached to the accompanying Declaration of David W. Garland as Exhibit 1, are designated as "(Am. Compl. ¶__)".

[2] References to the Dennings and Fussleman LTIP Agreements, which are attached to the Garland Declaration as Exhibits 2 and 3, respectively, are designated as ("Dennings Agrt, § __") and ("Fusselman Agrt., § __").

2

by or render[ing] ... any consulting, advisory or other services to or for the benefit of *VISA USA, VISA Inc., Visa Europe, American Express, Discover, JCB, China Union Pay, PayPal, STAR, NYCE*...." (Dennings Agrt., § 1 and Fusselman Agrt., § 1) (Emphasis added). The same restriction in Section 1(a) applied to "any other person, business or entity, the primary activity of which is to serve as a regional pin network or a general purpose network engaged in authorizing, clearing, settling and switching of payment transactions...." (*Id.*).

The second non-compete provision, which is found in Section 1(b) and labeled "Other Competitors," contains a similar prohibition for any employment with a "... business or activity, that is directly or indirectly in competition with any business or activity engaged in by [MasterCard] or an Affiliated Employer or ... is being contemplated by MasterCard or an Affiliated Employer, without regard to geographic limitation." (Dennings Agrt., § 1 and Fusselman Agrt., § 1).[3]

Neither Section 1(a) nor 1(b) of the LTIP Agreements prohibits employment with NIKE. As a result, the Amended Complaint pleads that MasterCard and NIKE are *not* competitors: MasterCard is "a technology and payments industry leader" while NIKE is "a well-known retailer." (Am. Compl. ¶¶ 10, 14).

2.    **The Non-Solicitation Provisions**

Section 2 of the LTIP Agreement, entitled "Non-Solicitation," also contains two separate restrictive covenants. The first, Section 2(a), barred Dennings for a period of twenty-four (24) months following his departure from NIKE from "solicit[ing], induc[ing], recruit[ing] or encourag[ing] any other employee, agent, consultant or representative to leave the service of

---

[3] "Affiliated Employer" is defined in the MasterCard Incorporated 2006 Long Term Incentive Plan (as amended and restated effective June 7, 2007) (the "LTIP," attached as Exhibit 4 to the Garland Declaration) as "all persons with whom [MasterCard Incorporated and any successors or assignees] would be considered a single employer under Section 414(b) or Section 414(c) of the [Internal Revenue] Code." The Amended Complaint does not allege that NIKE competes with an Affiliated Employer.

3

[MasterCard] or an Affiliated Employer for any reason." (Dennings Agrt., § 2). The same restriction applied to Fusselman for twelve (12) months after he left MasterCard. (Fusselman Agrt., § 2). For ease of reference, this first non-solicitation provision is referred to herein as the "non-recruitment provision."

The second non-solicitation provision, found in Section 2(b), barred Dennings and Fusselman from "solicit[ing] or induc[ing] any customer, supplier or other person with whom [MasterCard] or an Affiliated Employer is engaged in business or … is planning or proposing to engage in business, to limit, forego, divert to another, terminate or reduce any commercial relationship or prospective commercial relationship with [MasterCard] or an Affiliated Employer or cease to accept or issue their products." (Dennings Agrt., § 2 and Fusselman Agrt., § 2). The same time restrictions as in the non-recruitment provision applied to the second non-solicitation provision. (*Id.*).

### 3.   The Confidential Information Provision

Section 3 of the LTIP Agreement, entitled "Non-Disclosure of Confidential Information," prevents Dennings and Fusselman from "directly or indirectly us[ing] or disclos[ing] Confidential Information … for so long as it shall remain Confidential Information…." (Dennings Agrt., § 3 and Fusselman Agrt., § 3). The same section sets forth MasterCard's definition of "Confidential Information." (*Id.*).

### 4.   The Choice of Law Provision

Section 12 of each LTIP Agreement provides that it "shall be construed and enforced in accordance with the laws of the State of New York without reference to principles of conflict of laws." (Dennings Agrt., § 12 and Fusselman Agrt., § 12).

FIRM:28964254

C.     **The Pertinent Allegations of the Amended Complaint**

MasterCard's 145-paragraph Amended Complaint can be distilled to the following

allegations for purposes of this motion:

- MasterCard's IS Department had more than 135 employees in the O'Fallon, Missouri location where Dennings and Fusselman worked.  (Am. Compl. ¶ 28).

- NIKE hired Dennings as CISO in or about May 2013.  (Am. Compl. ¶ 51).

- In the period between October 2013 and September 2014, Fusselman and five other employees from MasterCard's Missouri-based IS Department, as well as two employees from other Missouri-based information technology departments, were solicited by defendants to work for NIKE in Oregon: Lisa Rachel, Steven Templeton (from the Integrated Processing Systems Department), Chris Guthrie, Jennifer Watson, James Watson (from the Network Services Department), Ronald Yount, and Matt Livingston.  (Am. Compl. ¶¶ 3, 58, 70, 75, 77, 81, 90, 95, 96, 101, 103, 107, 108, 114, 115, 120).

- As part of their jobs while they worked at MasterCard, Dennings and Fusselman received some of MasterCard's confidential information, including information about MasterCard's "network configuration" and MasterCard's managers and employees.  (Am. Compl. ¶¶ 31, 48).

- While they were employed by MasterCard, Dennings and Fusselman worked closely with MasterCard's confidential information, and with "the suppliers and other persons with whom MasterCard was engaged in business."  (Am. Compl. ¶¶ 31, 48).

- Defendants "reconfigured" NIKE's information security system to look like MasterCard's, using MasterCard's confidential information.  (Am. Compl. ¶ 55, 56).

- Defendants "solicited" and "diverted" the business of "MasterCard's suppliers and other persons with whom MasterCard was engaged in business."  (Am. Compl. ¶¶ 55, 56).

## ARGUMENT

In order to withstand a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6), the Amended Complaint must contain "sufficient factual matter"

which, if accepted as true for purposes of the motion, states a claim that is "plausible on its face."

*Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

While courts must accept as true all well-pleaded factual allegations in the complaint,

FIRM:28964254

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any conclusory statements in a complaint. *Id.* at 679.  A court also need not accept as true legal conclusions which are dressed up as "facts." *Iqbal* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Second Circuit Court of Appeals has explained that while the *Twombly* and *Iqbal* standard does not "heighten" pleading requirements, it does impose a requirement of "factual amplification where needed to render a claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).[4]

## POINT I
## THE BREACH OF CONTRACT CLAIMS AGAINST
## <u>DENNINGS AND FUSSELMAN SHOULD BE DISMISSED.</u>

Count I of the Amended Complaint contains three separate contract claims against Dennings and Fussleman. *First*, MasterCard alleges that each violated Section 2(a) of their LTIP Agreements by "soliciting and assisting NIKE in soliciting, directly or indirectly, MasterCard managers and employees." (Am. Compl. ¶ 128).  *Second*, MasterCard alleges that Dennings and Fusselman violated Section 3 of the LTIP Agreements by "disclosing Confidential Information concerning MasterCard's managers and employees who worked in, or supported, MasterCard's Information Security Department to NIKE to facilitate their selection" and by "disclosing MasterCard's Confidential Information to reconfigure NIKE's system to resemble that of MasterCard." (*Id.*).  *Third*, MasterCard claims that Dennings and Fusselman violated Section 2(b) of the LTIP Agreement by "soliciting MasterCard's suppliers and other persons with whom MasterCard was engaged in business in order to divert their business to NIKE." (*Id.*).

---

[4] While a motion to dismiss is typically directed solely at the complaint, "[d]ocuments that are … incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted).  Accordingly, the LTIP Agreements are considered incorporated as part of the Amended Complaint and may be considered here.

A.      **The Non-Recruitment Provision Is Unenforceable.**

New York law disfavors agreements which "sanction[ ] the loss of a man's livelihood."

*American Broadcasting Cos., Inc. v. Wolf*, 52 N.Y.2d 394, 404, 420 N.E.2d 363, 368, 438

N.Y.S.2d 482, 487 (1981).  Thus, restrictive covenants between an employer and employee that

limit the employee's post-employment options must be "rigorously examined" and "enforced

only to the extent necessary to protect the employer from *unfair competition*."   *Reed Elsevier*

*Inc. v. TransUnion Holding Co.*, No. 13 Civ. 8739, 2014 U.S. Dist. LEXIS 2640, at *17

(S.D.N.Y. Jan. 9, 2014) (quotations omitted ) (emphasis added).  If a restrictive covenant is not

tailored to prevent *unfair competition*, then the covenant is not enforceable.  *BDO Seidman v.*

*Hirschberg*, 93 N.Y.2d 382, 389, 712 N.E.2d 1220, 1223, 690 N.Y.S.2d 854, 857 (1999).

The New York Court of Appeals has adopted a reasonableness standard to evaluate the

validity of restrictive covenants ancillary to employment:  "[A] restrictive covenant will only be

subject to specific enforcement to the extent that it is reasonable in time and area, necessary to

protect the employer's legitimate interests, not harmful to the general public and not

unreasonably burdensome to the employee."  *BDO Seidman*, 93 N.Y.2d at 389, 712 N.E.2d at

1223, 690 N.Y.S.2d at 857 (quoting *Reed Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 397, 353

N.E.2d 590, 593, 386 N.Y.S.2d 677, 679 (1976)).  The *BDO Seidman* court further noted:

> A restraint is reasonable only if it: (1) is no greater than is required
> for the protection of the legitimate interest of the employer, (2)
> does not impose undue hardship on the employee, and (3) is not
> injurious to the public. . . . A violation of any prong renders the
> covenant invalid.

*Id*. at 388-89, 718 N.E.2d at 1223, 690 N.Y.S.2d at 856-857.[5]

---

[5] New York courts have concluded that non-recruitment provisions are subject to the same reasonableness test set forth in *BDO Seidman.  See, e.g., Reed Elsevier Inc. v. TransUnion Holding Co.,* No. 13 Civ. 8739, 2014 U.S. Dist. LEXIS 2640 (S.D.N.Y. Jan. 9, 2014); *Penton Learning Sys., LLC v. Defense Strategies Institute Group*, 2014 NY Slip Op. 32130(U), 2014 N.Y. Misc. LEXIS 3622, at *74 (N.Y. Sup. Ct. Jul. 28, 2014) (collecting cases).

FIRM:28964254

With respect to the first prong of the reasonableness test, the Court of Appeals has defined what constitutes a "legitimate interest," in keeping with public policy allowing only the level of restriction necessary to protect the employer from *unfair competition*. *BDO Seidman*, 93 N.Y.2d at 391, 712 N.E.2d at 1224, 690 N.Y.S.2d at 858. The legitimate business interests an employer may attempt to protect with a restrictive covenant are limited to (i) protection from misappropriation of the employer's trade secrets or of confidential customer information; (ii) protection of employer's customer base from unfair competition; and (iii) protection from competition by a former employee whose services are unique or extraordinary. *Reed Elsevier*, 2014 U.S. Dist. LEXIS 2640, at *22; *BDO Seidman*, 93 N.Y.2d at 389-391, 712 N.E.2d at 1223-1225, 690 N.Y.S.2d at 857-859. That list of legitimate business interests has been held to be an exclusive one. *Reed Elsevier*, 2014 U.S. Dist. LEXIS 2640, at *32-33 (collecting cases).

All of the listed interests are directly related to protection of an employer from *unfair competition*, but MasterCard has pleaded that it and NIKE are *not* competitors. Thus, in order for MasterCard to avert dismissal of the breach of contract claim related to the non-recruitment provision, it must persuade this Court to find a legitimate business interest *not* previously found by any New York court – and one not intended to protect an employer from unfair competition. The Court should reject any such argument by MasterCard, as the Amended Complaint inappropriately seeks to inhibit fair competition for employment talent and opportunities while not supporting any legitimate interest of MasterCard.

1.   **The New York Courts That Have Considered the Enforceability of a Non-Recruitment Provision Have Emphasized The Importance of Protecting a Company from a Competing Business.**

In *Lazer Inc. v. Kesselring*, 13 Misc. 3d 427, 823 N.Y.S.2d 834 (N.Y. Sup. Ct., 2005), the plaintiff sought to enforce a non-recruitment provision against a former employee who had not joined a competitor. The non-recruitment provision stated that "[d]uring the non-competition,

8

the employee shall not hire any employee of the company *or solicit any employee of the company to leave the employment of the company for any purpose*." *Lazer*, 13 Misc. 3d at 429, 823 N.Y.S.2d at 836 (emphasis added).  Analyzing the enforceability of the non-recruitment provision under New York law, the court concluded that a non-recruitment agreement "restricting as it does a former employee's freedom to solicit his former co-employees, necessarily also affects 'the general competitive mold of society,' and is in derogation of the concept, invoked in the cases on this subject, that 'our economy is premised on the competition engendered by the uninhibited flow of services, talent and ideas.'" *Id.* at 431, 823 N.Y.S.2d at 837 (citations omitted).

Significantly, the plaintiff in *Lazer* failed to demonstrate any legitimate business interest in preventing a former employee from soliciting another employee to work for a non-competitor. The court noted that it was "[m]ost important" that the plaintiff could *not* show that it and the defendant's new employer were "competitors in any sense of the word other than that any two employers would like the services of a good employee.  To the extent that interest is affected by the alleged recruitment here, it is not one of those interests which permit enforcement of a restrictive covenant in this state." *Id.* at 433, 823 N.Y.S.2d at 839.  Thus, the former employee "establishe[d] as a matter of law that enforcement of the nonrecruit provision of the agreement will not serve any legitimate employer interest in the circumstances...." *Id.*

In *Renaissance Nutrition, Inc. v. Kurtz*, 2012 U.S. Dist. LEXIS 2490 at *14-15 (W.D.N.Y., Jan. 9, 2012), two former employees went to work for a competitor, and their prior employer (Renaissance) sought enforcement of their non-recruitment agreement.  Applying *BDO Seidman*, the court stated in order for Renaissance to obtain enforcement of the non-recruitment provision, it must show that "... the departed employees would engage or did engage

in *competitive business* with Renaissance....." *Renaissance*, 2012 U.S. Dist. LEXIS 2490, at *12

(emphasis added).

The *Renaissance* court then relied upon *Lazer*:

> This Court looks to *Lazer* – the one New York case analyzing a
> non-recruitment clause.... There, the court found, "[m]ost
> important, plaintiff fail[ed] to raise an issue of fact that [recruited
> employees' company] and it are *competitors* in any sense of the
> word other than any two employers would like the services of a
> good employee.

*Id.* at *13 (emphasis in original). The court added, "[t]hus, *Lazer* suggests that one factor courts

should consider, indeed *the most important factor, is whether the employees were recruited to*

*compete* with the plaintiff-company." *Id.* (emphasis added). Because the defendants had joined

a *competitor* of Renaissance and therefore the "covenant protected Renaissance's legitimate

interest in maintaining its client base," the court enforced the non-recruitment provision in that

case. *Id.* at *15.

> **2.     Other Courts Which Have Considered the Enforceability of a Non-
>          Recruitment Provision Have Also Emphasized the Importance of
>          Protecting a Company from its Competitor.**

Two cases decided under Illinois law, which is very similar to New York law, also show

why the Court should reject MasterCard's proposed expansion of the law.[6]

In *YCA*, the defendant (a former employee of YCA) had signed a restrictive covenant

agreement that included a non-recruitment provision barring him from "... directly or indirectly

by assisting others, recruit[ing] or hir[ing], or attempt[ing] to recruit or hire, any other associate

of YCA, or induc[ing] or attempt[ing] to induce any associate of YCA to terminate association

with YCA." *YCA*, 2004 U.S. Dist. LEXIS 8129, at *3-4. When examining YCA's non-

---

[6] Like those in New York, Illinois courts "closely scrutinize restrictive covenants." *Grand Vehicle Works Holdings
Corp. v. Frey*, No. 03 C 7948, 2005 U.S. Dist. LEXIS 13629, at *5 (N.D. Ill. July 8, 2005). Illinois courts only
enforce restrictive covenants "upon finding the covenant reasonable and necessary to protect an employer's
legitimate business interest." *YCA, L.L.C. v. Berry*, No. 03 C 3116, 2004 U.S. Dist. LEXIS 8129, at *24-25 (N.D.
Ill. May 6, 2004).

FIRM:28964254

recruitment provision, however, the court found it "too over-broad to protect YCA's legitimate business interest: ensuring that its confidential information remains within YCA, and does not benefit *competitors*." *Id.* at *50:

> [This non-recruitment provision] bars [the defendant] from recruiting *any* YCA employees for *any* business, even for business doing wholly different lines of work in geographic areas where YCA does not even function. The Court cannot understand what legitimate purpose is accomplished by so broad a restrictive covenant. Indeed to demonstrate the absurdity of this covenant, the Court notes that it would theoretically prevent [the defendant] from recruiting a YCA's janitor to work as postal carrier in Somalia.

*Id.* at *50-51 (emphasis in original).

In *Frey*, another court analyzed a similar non-recruitment provision under a reasonableness standard and held the provision to be unenforceable because it was not "narrowly tailored" to protect the employer's legitimate business interests. *Frey*, 2005 U.S. Dist. LEXIS 13629, at *9. In *Frey*, it was fatal to the plaintiff's claim that the non-recruitment provision "bar[red] recruitment on behalf of any company, whether or not that company *competes* with [the plaintiff]." *Id.* at *8 (emphasis added).

### 3.   Applying the Teachings of the Case Law

As in the cases discussed above, where the non-recruitment provision was not enforced in the absence of potential competitive harm, there is not only no competitive harm pleaded by MasterCard, there is an explicit admission that it and NIKE are *not* competitors. The LTIP Agreement provision in issue is also much more comprehensive than would be necessary to protect any legitimate interest. According to the language in Section 2(a) of the LTIP Agreement, an employee could not even suggest his spouse leave the company if the spouse was unhappy working there or could not solicit the services of a former assistant, or even the cleaning staff. Rather than enforcing a protectable interest, MasterCard's non-recruitment provision

11

simply seeks to prevent employees from leaving MasterCard, but that is not a legitimate business interest under New York law.[7]

MasterCard would have this Court go further than any court has gone before – and hold that in whatever business a company might find itself, every company outside of that business is somehow a competitor because it might be competing for employees in the same field, whether they be IT, human resources, accounting, or engineering professionals.  Companies are not "competitors," however, simply based upon their use of the same types of highly skilled employees.  Thus, MasterCard has failed to state a claim for breach of the non-recruitment provision.

**B.**      **MasterCard Has Failed To Plead A Breach Of The Confidentiality Provision.**

MasterCard alleges that Dennings and Fusselman misused two types of supposedly confidential information in violation of Section 3: information concerning MasterCard's IS managers and employees, and information about MasterCard's "network configuration." (Am. Compl. ¶¶ 69, 128).  Though MasterCard repeats – on "information and belief" – permutations of those conclusory allegations throughout the Amended Complaint (*Id.* at ¶¶ 12-14, 53-57, 69, 89, 123, 128), it never connects them to well-pleaded facts as required by *Twombly* and *Iqbal.*  That failure is a fatal deficiency.

With respect to the allegations that Dennings and Fusselman improperly disclosed information concerning MasterCard's managers and employees, MasterCard alleges facts to suggest that Dennings and Fusselman had knowledge of the "organizational structure" of MasterCard's information security department, including the managers and employees and "their

---

[7] The non-recruitment provision has the effect of preventing MasterCard employees who are not subject to restrictive covenants from learning of opportunities in the economy that may be able to use their services, even where, as here, such opportunities do not threaten MasterCard's legitimate business interests.  That type of restriction on employment is injurious to the public at large and, accordingly, violates the third prong of the Court of Appeals' reasonableness test.  *BDO Seidman*, 93 N.Y.2d at 388-89, 712 N.E.2d at 1223, 690 N.Y.S.2d at 856-857.  The non-recruitment provision is unenforceable for that additional reason.

expertise, their compensation, their capabilities and their performance," (Am. Compl. ¶¶ 47, 59),

and that they also had knowledge of the employees and managers in other, related departments.

(*Id.* at ¶¶ 48, 60).  MasterCard then leaps to the allegations, made, necessarily, on "information

and belief," that such information was confidential, and that Dennings and Fusselman used that

information to target and solicit MasterCard employees to work at NIKE.  Those latter

allegations are conclusory, without factual basis, and should be disregarded. *Iqbal*, 556 U.S. at

678-79.

 In the first place, MasterCard sets forth no facts to support the conclusory statement that

basic information about employees is the sort of confidential information that is meant to be

protected by Section 3 of the LTIP Agreements.  Notably, it does not fall within the definition of

Confidential Information in the Agreements.  (Dennings Agrt., § 3 and Fusselman Agrt., § 3).

To the contrary, the Amended Complaint alleges that at least some of the employees at issue had

"LinkedIn" profiles (Am. Compl. ¶¶ 75, 88, and 110), where they provide information about

their expertise and capabilities.  There are also no facts pleaded to suggest that compensation and

other information could not be simply disclosed by the employees themselves.

 Moreover, the allegations in the Amended Complaint provide no support for the

conclusory statement that Dennings and Fusselman ever disclosed any allegedly confidential

information about MasterCard's organizational structure or employees to NIKE.  The allegation

that Dennings and Fusselman *knew* such information simply does not, by itself, support the

allegation that they improperly *disclosed* such information.  Nor does the allegation that

Dennings prepared a confidential report on certain employees change the analysis.  (Am. Compl.

¶ 49).  Dennings' alleged preparation of a report identifying "key talent" employees merely

reflects his potential knowledge of some MasterCard employees, not his disclosure of such

FIRM:28964254

information to NIKE.  MasterCard appears to suggest that the fact that three of eight employees identified in the report went to NIKE is significant; yet that means that five of the eight employees did *not* go to NIKE.  (*Id.*)  Accordingly, there are no factual allegations to support the assertion that Dennings or Fusselman disclosed any confidential information about MasterCard's employees.

MasterCard also alleges that Dennings, Fusselman and NIKE "reconfigure[d] NIKE's network to resemble that of MasterCard" using MasterCard's "confidential information."  (Am. Compl. ¶ 128).  This utterly speculative and conclusory allegation, made on "information and belief" throughout the Amended Complaint (Am. Compl. ¶¶ 12-14, 53-57, 69, 89, 123, 128), lacks any factual support in the pleading.

Allegations made upon "information and belief" can only hold up when either "[1]the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Installed Bldg. Prods., LLC v. Cottrell*, No. 13 Civ. 1112, 2014 U.S. Dist. LEXIS 101926, at *10 (W.D.N.Y. Jul. 25, 2014) (citation omitted).  When allegations are made on "information and belief," they must be "accompanied by a statement of the facts upon which the belief is founded." *JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (citation omitted).  The allegations about MasterCard's network configuration fail to meet this standard.  In fact, they are entirely conclusions disguised as factual allegations, and as such, should be disregarded by the Court.  *Iqbal*, 556 U.S. at 678-79.

To start with, MasterCard never defines "network configuration," other than to allege that the network configuration "enabled MasterCard to protect the information and other data of its customers, employees and contracting parties."  (Am. Compl. ¶¶ 9, 31).  Those are broad,

14

meaningless, and entirely speculative statements.  They do not lead to any fair inferences about the size, shape or scope of the alleged "network configuration," or the sort or source of allegedly confidential information that was used or could be vulnerable.

Next, none of MasterCard's allegations about the "network configuration" contains any facts suggesting that confidential information was taken from MasterCard.  There are no allegations that MasterCard found any evidence that Dennings, Fusselman, or any of the other former MasterCard employees who now work at NIKE, downloaded, copied or took any confidential information whatsoever.  In fact, there are no factual allegations whatsoever suggesting any basis for that conclusory, baseless, and inflammatory allegation.  Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

While NIKE's (but not MasterCard's) "network configuration" might be particularly within NIKE's knowledge, MasterCard must, but does not, demonstrate that it has some basis for the allegation that NIKE reconfigured its system, or that any supposed reconfiguration could have used MasterCard's confidential information.  "When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are 'based on secondhand information that [he] believes to be true.'" *Barrett v. Forest Labs., Inc.,* 39 F. Supp. 3d 407, 431 (S.D.N.Y. 2014) (citation omitted).  MasterCard has not complied with this standard.

## C.   MasterCard Has Failed To Plead A Breach Of The Non-Solicitation of Suppliers Provision.

Though it is clear that the primary purpose of Section 2(b) of the LTIP Agreements is to prevent former employees from taking customers, customer relationships are not in danger – as

FIRM:28964254

MasterCard and NIKE are *not* competitors.  Thus, MasterCard alleges that Dennings and

Fusselman breached this provision by allegedly "induc[ing] suppliers and other persons with

whom MasterCard was engaged in business to divert resources to NIKE and away from

MasterCard." (Am. Compl. ¶¶ 14, 55, 69).  These allegations, too, are merely conclusory

statements, insufficient on their face to avert dismissal of the Amended Complaint. *Iqbal*, 556

U.S. at 678-79.

For one thing, MasterCard does not identify any of the alleged "suppliers and other

persons," or identify what kind of suppliers (or "other persons") they were, or what business they

allegedly did with MasterCard, or how MasterCard has been deprived of such services because

of defendants' alleged action.  Such vague, conclusory statements cannot form the basis of a

breach of contract claim.  It is not enough to point to a portion of a contract and simply declare

that it was breached, but that is exactly what MasterCard does here. *Iqbal*, 556 U.S. at 678.

Besides the fact that the "suppliers and other persons" are in no way identified, there are

no allegations regarding how NIKE, could be "divert[ing]" the resources of such suppliers and

"others" from MasterCard.  There are no factual allegations to suggest that, even if NIKE is

using the services of such (unidentified) suppliers, MasterCard would not also have its needs

met.  MasterCard is simply not entitled to insert such broad, baseless statements in a cynical

attempt to avert dismissal of its lawsuit.  A complaint that merely tracks the elements of a claim

in conclusory fashion is not well-pleaded and should be dismissed. *Iqbal*, 556 U.S. at 678.

FIRM:28964254

## POINT II
## MASTERCARD HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT.

Count II of the Amended Complaint purports to plead a claim for tortious interference with contract.  Specifically, MasterCard alleges that NIKE, Dennings and Fusselman somehow interfered with the LTIP Agreements.  (Am. Compl. ¶¶ 133-35).

### A.    Applicable Law Analysis.

As a tortious interference claim is a common law claim under state law, it is necessary to identify the appropriate state's law to apply to this claim.  The laws of three states – Oregon, Missouri, and New York – could potentially apply.

In a diversity case such as this one, the Court applies the choice of law rules of the forum state.  *Erie RR v. Tompkins*, 304 U.S. 64, 82 (1938).  New York's choice of law rules initially require a determination whether an actual conflict exists between the laws of the jurisdictions at issue.  *Czech Beer Imps., Inc. v. C. Haven Imps., LLC,* No. 04 Civ. 2270, 2005 U.S. Dist.  LEXIS 12310, at *8-9 (S.D.N.Y. June 23, 2005).

### 1.    Oregon Law

Under Oregon law, there is no distinction made between the elements of a claim for tortious interference with contract or with prospective economic advantage, and Oregon requires a showing of improper means or improper purpose.  The elements are as follows:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841, 844 (Or. 1995) (citations omitted).

Thus, Oregon law requires a plaintiff to plead and prove that, in order to be liable for a tort, any

17

interference by defendants must have been accomplished *through improper means or for an improper purpose.*

An improper purpose under Oregon law is limited to an intent "to inflict injury on the plaintiff 'as such.'" *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 15 F. Supp. 3d 1075, 1108 (D. Or. 2014) (citation omitted) (quoting *NW. Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498, 982 P.2d 1117, 1124 (Or. 1999)).  It does not constitute an improper purpose when a defendant's interference with a contract is in a manner "wholly consistent with [its] pursuit of its own business purposes as it [sees] them." *Top Serv. Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 212, 582 P.2d 1365, 1372 (Or. 1978).

2.   **Missouri Law**

Under Missouri law, a plaintiff must plead and prove:

> (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct.

*Western Blue Print Co., LLC v. Roberts*, 367 S.W. 3d 7, 19 (Mo. 2012) (citations omitted).  In a Missouri action for tortious interference, "[i]f the defendant has a legitimate interest, economic or otherwise, in the contract...sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Corp. v. Zenfinity Capital, LLC*, No. 4:14-CV-00754, 2015 U.S. Dist. LEXIS 7770, at *19 (E.D. Mo., Jan. 23, 2015) (quoting *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 317 (Mo. 1993) (*en banc*)).  Subsequent courts have interpreted the *Nazeri* case as imposing a requirement that a plaintiff must plead and prove improper means in all tortious interference cases. *Id.* (citing *Clinch v. Heartland Health*, 187 S.W.3d 10, 16 (Mo. Ct. App. W.D. 2006)).  Under Missouri

18

law, "[i]mproper means" is an "independently wrongful act" such as fraud, deceit, coercion, threats, or violence. *Id.*

### 3.     New York Law

Under New York law, the elements of a claim for tortious interference with contract are:

> (1) that a valid contract exists between the plaintiff and a third party; (2) that the defendant had knowledge of the contract; (3) that the defendant intentionally interfered with or procured the breach of the contract without justification; and (4) that the breach resulted in damage to the plaintiff.

*See, e.g., Foster v. Churchill,* 87 N.Y.2d 744, 749-50, 665 N.E.2d 153, 156, 642 N.Y.S.2d 583, 586 (1996);  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996).

Thus, there is a substantive difference among the states' laws.

### B.     Oregon Law Applies.

New York law applies an "interest analysis" to determine which state's law should apply. *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992).  Under the interest analysis test, the law of the jurisdiction with the greatest interest in the litigation will be applied. *Id.*  In order to determine which jurisdiction has the greater interest, the Court confines its analysis to "only those facts or contacts that relate to the purpose of the particular laws in conflict." *Id.*  Tortious interference claims are considered "conduct-regulating." *Czech Beer Imps.*, 2005 U.S. Dist. LEXIS 12310, at *13.  When a tort is conduct-regulating, generally the jurisdiction where the tort occurred has the greatest interest in the outcome, and the law of that state should be applied. *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996); *AroChem Int'l*, 968 F.2d at 270; *Torah Soft, Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 720 (S.D.N.Y. 2002).

Here, the Amended Complaint alleges that NIKE hired the employees in issue to work in Oregon.  Any alleged solicitation activity – thus any alleged interference with the LTIP

FIRM:28964254

Agreements – would necessarily have originated or taken place in Oregon. Oregon is also NIKE's state of incorporation and location of its headquarters, and where the individual defendants reside and where NIKE hired them to work. Oregon has an interest in regulating the conduct of its corporate and individual citizens, and an interest in the employees of its corporate citizens and how they are hired.

While there are some ties to Missouri, as it is the state in which the individual defendants previously lived and worked, and where MasterCard's IS Department is housed, Missouri does not have the same level of interest in regulating the conduct of the parties as does Oregon. None of the parties resides in Missouri. The LTIP Agreements may have been signed in Missouri, but the Agreements themselves eschew Missouri law by having New York law govern them. The only activities related to the alleged tortious interference are that the employees at issue left MasterCard in Missouri, and MasterCard's alleged damages would have occurred there, as MasterCard claims it was damaged by having to hire replacement employees, and by having to incur extra time and resources to complete projects and to obtain service from suppliers. (Am. Compl. ¶ 137).

New York has virtually no interest in the tortious interference claim. The Amended Complaint does not allege that any misconduct occurred in New York. The only connection to New York, besides the LTIP Agreement's choice of law provision (which is not applicable to the tort claim), is that MasterCard's headquarters is in New York.

Based on this analysis, Oregon law should apply to MasterCard's claim for tortious interference with contract.

FIRM:28964254

**C.** **Under Oregon Law, MasterCard Has Failed to Plead a Claim for Tortious Interference with Contract.**

MasterCard does not state a claim for tortious interference under Oregon law. *First*, defendants cannot have interfered with the non-recruitment clause of the Agreements because, as explained above, it is not an enforceable provision. (*See* Point I.A). *Second*, MasterCard has failed to plead adequately a breach of the confidentiality or non-solicitation of supplier provisions. *Iqbal* 556 U.S. at 678. (*See* Points I.B and I.C). Accordingly, without the LTIP Agreements having been breached, there can be no tortious interference with the LTIP Agreements. *McGanty v. Staudenraus,* 901 P.2d at 844.

Even if MasterCard had sufficiently pleaded a breach, the tortious interference claim cannot survive under Oregon law because MasterCard has failed to allege an improper purpose or improper means. None of the allegations in the Amended Complaint suggests that any of the defendants were acting only to inflict harm upon MasterCard. Instead, the Amended Complaint only alleges that the reason for defendants' alleged solicitation of employees or suppliers, or alleged use of confidential information, was to improve NIKE's information security. That does not constitute an improper purpose. *ICTSI Or.*, 15 F.Supp. 3d at 1108; *Chase Gardens*, 328 Or. at 498, 982 P.2d at 1124.

Nor does the Amended Complaint indicate that any alleged interference was accomplished through improper means on the part of defendants. It is not enough that interference be deliberate; it must go beyond that in order to be actionable under Oregon law. *Numrich v. Ntekpere*, No. 12-CV-01494, 2013 U.S. Dist. LEXIS 14792, at *15 (D. Or. Feb. 4, 2013). Improper means "requires a violation of a statute, regulation, recognized rule of common

21

law, and perhaps an established standard of a trade or profession." *ICTSI Or.*, 15 F.Supp. 3d at

1109.[8]  No such violation has been pleaded.

**POINT III**
**MASTERCARD CANNOT STATE**
**A CLAIM FOR UNFAIR COMPETITION.**

The choice of law analysis for the claim of unfair competition claim in Count III of the

Amended Complaint is the same as that for tortious interference with contract:  first a

comparison of the potentially interested states' law is necessary to determine whether there is an

actual conflict. *Czech Beer Imps.*, 2005 U.S. Dist.  LEXIS 12310, at *8-9.

**A.**    **Applicable Law Analysis.**

    **1.**    **Oregon Law**

Under Oregon law, the Uniform Trade Secrets Act ("OUTSA") "supersede[s] conflicting

tort, restitution or other law of Oregon providing civil remedies for misappropriation of a trade

secret." *Precision Automation, Inc. v. Tech. Servs.*, 2007 U.S. Dist. LEXIS 94555, at *5 (D. Or.

Dec. 14, 2007) (citing OR. REV. STAT. § 646.473(1)).  Oregon courts have found that unfair

competition claims that rely in part on an alleged conspiracy to use trade secrets, as does the

Amended Complaint here, are preempted by OUTSA. *Id.*; *Vigilant.com v. ArgusTest.com, Inc.*,

2005 U.S. Dist. LEXIS 45999 (D. Or. Sept. 6, 2005).

OUTSA requires a plaintiff to demonstrate:  "(1) the subject of the claim qualifies as a

statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of

its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation."

*Id.* (citing *AcryMed., Inc. v. ConvaTec.*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004)).

---

[8] As noted in Points I.B and I.C, the allegations regarding "reconfiguring the network" or "diverting suppliers and other persons" are speculative and conclusory, and should be disregarded.

22

### 2.    Missouri Law

Under Missouri law, a claim for unfair competition relies on a competitive relationship between the plaintiff and defendant. *Energy Consumption Auditing Servs., LLC v. Brightergy, LLC*, No. 13-2588, 2014 U.S. Dist. LEXIS 126676, at *22 (D. Kan. Sept. 10, 2014). Traditionally, in Missouri, the plaintiff must demonstrate that defendants have misused a trade secret in a way that causes damages to the plaintiff in order to sustain an unfair competition claim. *Conseco Fin. Servicing Corp. v. N. Am. Mort. Co.*, 381 F.3d 811, 818-19 (8th Cir. 2004). While some recent federal courts have noted that Missouri law would recognize the somewhat broader elements of an unfair competition claim elucidated in the Restatement (Third) of Unfair Competition, the claim is still dependent upon *competing* unfairly. *Energy Consumption Auditing*, 2014 U.S. Dist. LEXIS 126676, at *19-20.

### 3.    New York Law

New York law recognizes two theories of common-law unfair competition:  (1) palming off (sale of the goods of one manufacturer as those of another; not applicable here) and (2) misappropriation. *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08 Civ. 03710, 2010 U.S. Dist. LEXIS 33252, at *25 (S.D.N.Y. Mar. 29, 2010).  To sustain a claim under the misappropriation theory, the plaintiff "must show that the defendants misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so." *Rockland Expo., Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 326 (S.D.N.Y., 2012) (citing *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692, 833 N.Y.S.2d 138, 140 (N.Y. App. Div. 2007)).  Unlike Oregon's reliance on a trade secrets statute, New York unfair competition law is considered by some courts to be a "broad and flexible doctrine," *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001).  Accordingly, there is a substantive difference in the laws of all three states regarding the unfair competition claim.

23

An unfair competition claim is also considered "conduct regulating." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, No. 09-CV-8578, 2014 U.S. Dist. LEXIS 134830, at *84-85 (S.D.N.Y. Sept. 24, 2014).  For the same reasons applicable to the choice of law analysis on the tortious interference claim, there is no question that any activities that could be assessed for a determination as to whether they constituted unfair competition occurred in Oregon rather than in Missouri or New York, and Oregon law applies.

**B.      Oregon Law Precludes MasterCard's Claim for Unfair Competition.**

The gravamen of MasterCard's unfair competition claim is markedly similar to that of its breach of contract and tortious interference claims, and equally without basis: that defendants hired MasterCard employees, "reconfigured" NIKE's "system" to resemble MasterCard's, allegedly with the use of MasterCard confidential information, and did business with unidentified "suppliers and other persons" who also did business with MasterCard.  (Am. Compl. ¶ 142).  Because the claim depends in part on the alleged misuse of confidential information, it would fall under OUTSA.  *Precision Automation*, 2007 U.S. Dist. LEXIS 94555, at *5, 7.

The unfair competition claim does not meet any of the elements of a claim under OUTSA.  MasterCard does not even attempt to allege those elements, nor could it.  There is no allegation that confidential information allegedly used by defendants qualifies as a statutory trade secret, it was sufficiently and specifically protected from disclosure, or defendants' conduct constitutes statutory misappropriation, all of which are necessary criteria for pleading an unfair competition claim pursuant to Oregon law.  *AcryMed.*, 317 F. Supp. 2d at 1217 (D. Or. 2004).  Accordingly, the Amended Complaint fails to state a claim for unfair competition under Oregon law and should be dismissed.

FIRM:28964254

## <u>CONCLUSION</u>

For all of the foregoing reasons, defendants respectfully request that the Court dismiss the Amended Complaint with prejudice and award such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        April 27, 2015

                            EPSTEIN BECKER & GREEN, P.C.


                          By:    <u>/s/ David W. Garland</u>
                                  David W. Garland
                                  Aime Dempsey
                                  Dustin E. Stark
                          250 Park Avenue
                          New York, New York 10177
                          (212) 351-4500
                          *Attorneys for Defendants*

FIRM:28964254

## <u>CERTIFICATE OF SERVICE</u>

Aime Dempsey, an attorney admitted to practice before this Court, hereby certifies under penalty of perjury that on April 27, 2015, she caused the foregoing Notice of Motion, Declaration of David W. Garland with Exhibits and Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint to be served by hand upon following:

> Adam J. Safer, Esq.
> Miller Wrubel
> 570 Lexington Avenue
> New York, NY 10022

> EPSTEIN BECKER & GREEN, P.C.

> By: _Aime Dempsey_
> Aime Dempsey

> 250 Park Avenue
> New York, New York 10177-1211
> (212) 351-4500
> adempsey@ebglaw.com

> *Attorneys for Defendants*

FIRM:29670678v1